1  IRELL & MANELLA LLP
   Harry A. Mittleman (172343)
2    hmittleman@irell.com
   Howard J. Steinberg (89291)
3    hsteinberg@irell.com
   Iian D. Jablon (205458)
4    ijablon@irell.com
   Glenn K. Vanzura (238057)
5    gvanzura@irell.com
   1800 Avenue of the Stars, Suite 900
6  Los Angeles, California 90067-4276
   Telephone:  (310) 277-1010
7  Facsimile:   (310) 203-7199

8  Attorneys for Peter Healy

9

10         UNITED STATES BANKRUPTCY COURT

11         CENTRAL DISTRICT OF CALIFORNIA

12              RIVERSIDE DIVISION

13

14  In re: EMPIRE LAND LLC, et al.,        )  Case No. 6:08-bk-14592 MJ
                                           )
15              Debtors.                    )  Chapter 7
                                           )
16                                          )  [Substantively consolidated with
                                           )  Case Nos. 08-14599, 08-14604, 08-
17                                          )  14608, 08-14611, 08-14613, 08-14614,
                                           )  and 08-14615]
18                                          )
19                                          )  **NOTICE OF MOTION AND
                                           )  MOTION TO ENFORCE
20                                          )  SETTLEMENT AGREEMENT AND
                                           )  COURT ORDER, AND FOR
21                                          )  INJUNCTION**
                                           )
22                                          )
                                           )  Date:    August 31, 2010
23                                          )  Time:    10:00 a.m.
                                           )  Dept.:   301
24                                          )
                                           )  Judge:  Hon. Meredith A. Jury
25                                          )
                                           )
26  _____ )

27

28

2262223

1   **TO THE HONORABLE MEREDITH A. JURY, UNITED STATES**

2   **BANKRUPTCY JUDGE, AND TO ALL PARTIES ENTITLED TO NOTICE:**

3       **PLEASE TAKE NOTICE** that on August 31, 2010 at 10:00 a.m., before the

4   Honorable Meredith A. Jury, United States Bankruptcy Judge, in Courtroom 301 of

5   the United States Bankruptcy Court, Central District of California, Riverside

6   Division, 3420 Twelfth Street, Riverside, California, Peter Healy will and hereby

7   does move the Court for Entry of an Order enforcing the terms of the Anaverde

8   Settlement Agreement (the "Settlement Agreement") and this Court's Order dated

9   June 19, 2008 approving the Settlement Agreement (see Docket No. 167), and for an

10  injunction against the adversary action entitled Palmdale Land Investors, LLC, et al.

11  v. James P. Previti, et al. (Adv. Case No. 6:10-ap-01323-CB) and any other suit in

12  breach of the Settlement Agreement and Order.

13      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy

14  Rule 9013-1(f), any response to the Motion must be filed and served at least

15  fourteen (14) days before the hearing.  Papers not timely filed and served may be

16  deemed by the Court to be consent to the granting of the Motion.

17      **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this

18  Notice, the accompanying Motion and Memorandum of Points and Authorities, the

19  records in this case and all other matters of which this Court may take judicial

20  notice, and such other arguments or evidence that may be presented at any hearing

21  on the Motion.

22  Dated:  July 1, 2010          Respectfully submitted,

23            IRELL & MANELLA LLP

24

25            By: /s/ Howard J. Steinberg

26             Howard J. Steinberg

           Attorneys for Peter Healy

27

28

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ....................................................1

II.    BACKGROUND FACTS ........................................................2

   A.    The Relevant Parties And The Anaverde Project. ...................2

   B.    Empire Land Files For Bankruptcy And The Palmdale Parties  Enter Into A Court-Approved Settlement Releasing Mr. Healy. ...................................................4

       1.    The Release. ............................................6

       2.    The Covenant Not to Sue. ..................................9

       3.    Other provisions regarding Mr. Healy's liability. ...............10

   C.    The Palmdale Parties Sue Mr. Healy In Violation Of The Settlement Agreement. ...................................................10

III.    ARGUMENT ...................................................11

   A.    The Court Has Authority To Enforce The Settlement Agreement And Its Order Approving The Settlement Agreement. ...................................................12

   B.    The Settlement Agreement Unconditionally Released Mr. Healy From The Claims Asserted In The Palmdale Action. ..............15

       1.    Mr. Healy is a beneficiary of the Release and the Covenant Not to Sue. ..................................15

       2.    Each of the Palmdale Parties is bound by the Release. ...................................................15

       3.    The Release covers each cause of action asserted against Mr. Healy in the Palmdale Action. ...............16

       4.    The Covenant Not to Sue also bars the claims against Mr. Healy. ...................................19

       5.    The Farallon Entities also lack standing to sue Mr. Healy. ...................................................19

   C.    The Palmdale Parties Cannot Now Repudiate The Release. ..............20

   D.    Mr. Healy Should Be Awarded His Fees And Costs. .........................24

IV.    CONCLUSION ...................................................24

# TABLE OF AUTHORITIES

Page(s)

## Cases

Allarcom Pay TV, Ltd. v. Home Box Office, Inc.,
    2000 U.S. App. LEXIS 172 (9th Cir. Jan 4, 2000) ....................................... 23

Cia Anon Venezolana de Navegacion v. Harris,
    374 F.2d 33 (5th Cir. 1967) ................................................................. 12

Community Thrift & Loan v. Suchy (In re Suchy),
    786 F.2d 900 (9th Cir. 1985) ............................................................... 13

Crown Life Ins. Co. v. Springpark Assoc. (In re Springpark Assoc.),
    623 F.2d 1377 (9th Cir. 1980) ............................................................. 13

Dacanay v. Mendoza,
    573 F.2d 1075 (9th Cir. 1978) ........................................................ 13, 14

Gaston v. Hedgpeth,
    2010 U.S. Dist. LEXIS 54035 (C.D. Cal. May 28, 2010) ............................. 2

Grillo v. California,
    2006 U.S. Dist. LEXIS 15255 (N.D. Cal. Feb. 14, 2006) ........................... 12

In re Gibraltar Resources, Inc.,
    210 F.3d 573 (5th Cir. 2000) ............................................................... 16

Kukla v. National Distillers Products Co.,
    483 F.2d 619 (6th Cir. 1973) ............................................................... 12

Matter of West Texas Marketing Corp.,
    12 F.3d 497 (5th Cir. 1994) ................................................................. 12

Mir v Little Co. of Mary Hosp.,
    844 F.2d 646 (9th Cir. 1988) ................................................................. 2

PacLink Communications Int'l, Inc. v. Superior Court,
    90 Cal. App. 4th 958, 109 Cal. Rptr. 2d 436 (2001) ................................ 20

Pittsburgh & West Virginia R. Co. v. United States,
    281 U.S. 479, 50 S. Ct. 378 (1930) ........................................................ 20

Shell Petroleum, N.V. v. Graves,
    709 F.2d 593 (9th Cir. 1983) .......................................................... 19, 20

TNT Marketing, Inc. v. Agresti,
    796 F.2d 276 (9th Cir. 1986) .......................................................... 13, 15

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
    845 A.2d 1031 Del. 2004) ................................................................... 20

Turner v. Metro,
    1993 U.S. App. LEXIS 4378 (9th Cir. Feb. 22, 1993) ............................... 12

Page(s)

U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,
   971 F.2d 244 (9th Cir. 1992) .......................................................................2

Wallner v. Parry Professional Bldg., Ltd.,
   22 Cal. App. 4th 1446, 27 Cal. Rptr. 2d 834 (1994) ....................................20

Winet v. Price,
   4 Cal. App. 4th 1159 (1992) .......................................................................22

Wolfson v. Wolfson,
   2004 U.S. Dist. LEXIS 1485 (S.D.N.Y. Feb. 5, 2004) ...........................23, 24

Wood v. Virginia Hauling Co.,
   528 F.2d 423 (4th Cir. 1975) .......................................................................13

**Statutes**

Cal. Civ. Code § 1542 ...............................................................................7, 22, 23

Corp. Code, § 17300 .......................................................................................20

**Rules**

Fed. R. Civ. P. 9024 .........................................................................................23

Fed. R. Civ P. 60 ..............................................................................................23

Fed. R. Bankr. P. 9006 .....................................................................................23

Fed. R. Bankr. P. 7065-1 ...................................................................................14

# I.    **PRELIMINARY STATEMENT**

Two years after this Court approved the Anaverde Settlement Agreement dated April 23, 2008 (the "Settlement Agreement") – in which Palmdale Land Investors, LLC ("Palmdale"), on behalf of itself and Farallon Capital Management, LLC, Farallon Capital Partners, L.P., Farallon Capital Institutional Partners, L.P., and Farallon Capital Institutional Partners III, L.P. (together, "Plaintiffs") gave Peter Healy and others a broad, "absolute," "unconditional" and "irrevocable" release of claims – they sued Mr. Healy for claims covered by that release.[1]   The adversary action entitled <u>Palmdale Land Investors, LLC, et al. v. James P. Previti, et al.</u> (Adv. Case No. 6:10-ap-01323-CB) (the "Palmdale Action") violates the Settlement Agreement, including its release and covenant not to sue.  Mr. Healy therefore seeks the Court's assistance to enforce the Settlement Agreement and the Court's approval order, and to enjoin the Palmdale Action.[2]

Mr. Healy is a former director of the managing member of Empire Land LLC ("Empire Land"), which is one of eight Debtors in these bankruptcy proceedings.[3] In April 2008, Empire Land filed for Chapter 11 bankruptcy and entered into the Settlement Agreement with Palmdale concerning their joint investment in a residential real estate development known as Anaverde City Ranch (the "Anaverde Project").  The Settlement Agreement provided, among other things, for an irrevocable release by Plaintiffs of Mr. Healy and others for any claim (whether known or unknown) related to the Anaverde Project.  In their April 2008 motion to this Court seeking approval of the Settlement Agreement, the Debtors specifically explained that one purpose for the Settlement Agreement was to release claims

---

[1] The Settlement Agreement is attached hereto as <u>Exhibit A</u>.  The Court's order approving the Settlement Agreement is attached hereto as <u>Exhibit B</u>.

[2] A copy of the complaint in the Palmdale Action (the "Complaint") is attached hereto as <u>Exhibit C</u>.

[3] The other Debtors are Empire Construction, L.P.; Empire Global Holdings, L.P.; Empire Residential Construction, L.P.; Empire Residential Sales, L.P.; Aviat Homes, L.P.; Prestige Homes, L.P.; and Wheeler Land, L.P.

1   Palmdale believed it had against Empire Land, including claims for alleged

2   misrepresentations about Empire Land's financial condition and its intent to

3   contribute additional capital to the Anaverde Project.[4]  In June 2008, this Court

4   approved the Settlement Agreement, including the release of, and a covenant not to

5   sue, Mr. Healy.

6           Two years later, in April 2010, Plaintiffs brought the Palmdale Action against

7   Mr. Healy and others, alleging that in 2006 and 2007, the defendants misrepresented

8   Empire Land's financial condition and its intent to contribute additional capital to

9   the Anaverde Project.  The claims based on those allegations are clearly covered by

10  the release.  Indeed, they are the very allegations that Empire Land identified to the

11  Court as a basis for the release when Empire Land moved for an order approving the

12  Settlement Agreement in April 2008.  The Palmdale Action is therefore nothing

13  more than a transparent attempt to circumvent the release, and constitutes a breach

14  of the covenant not to sue.  Accordingly, and for the reasons set forth more fully

15  below, Mr. Healy respectfully asks the Court to enforce the Settlement Agreement

16  and to enjoin Plaintiffs from proceeding with the Palmdale Action, as well as any

17  other attempt by Plaintiffs to violate the Settlement Agreement.

## II.    BACKGROUND FACTS

### A.    The Relevant Parties And The Anaverde Project.

20          Peter Healy is a partner at the law firm of O'Melveny & Myers LLP.  (Ex. C,

21  ¶ 14.)  Mr. Healy separately served on the board of directors of Empire Partners,

---

22          [4] Debtors' motion for approval of the Settlement Agreement is attached hereto

23  as Exhibit D.  The proof of service for the motion, showing that the motion was
    served on Palmdale and its counsel, is attached hereto as Exhibit E.  Mr. Healy

24  respectfully requests that the Court take judicial notice of Exhibits A-E, all of which
    have been filed in these proceedings.  See Gaston v. Hedgpeth, 2010 U.S. Dist.

25  LEXIS 54035, *2 n.1 (C.D. Cal. May 28, 2010) (court taking judicial notice of its
    own files and records) (citing Mir v Little Co. of Mary Hosp., 844 F.2d 646, 649

26  (9th Cir. 1988)); see also U.S. ex rel. Robinson Rancheria Citizens Council v.

27  Borneo, Inc., 971 F.2d 244 (9th Cir. 1992) (court "may take notice of proceedings in
    other courts, both within and without the federal judicial system, if those

28  proceedings have a direct relation to matters at issue")

2262223

- 2 -

1   Inc. ("EPI"), the managing member of Empire Land.  (Id.)  Mr. Healy also acted as

2   an attorney for Empire Land and certain of its affiliates from time to time.  (Id.)

3       Empire Land was one of many affiliated companies comprising a group of

4   residential land, homebuilding and financing companies that developed master

5   planned communities and other land and construction projects located mainly in

6   California and Arizona.  (Id. ¶ 15.)  Among other projects, Empire Land invested in

7   the Anaverde Project, a mixed-use master planned community being developed in

8   Palmdale, California.  (Id. ¶ 19.)

9       In 2006, Empire Land acquired additional interests in the Anaverde Project,

10  so that it then owned 100% of the investment.  (Id.)  The investment was financed

11  by an August 2006 loan from IndyMac Bank.  (Id.)  Later in 2006, Palmdale made

12  an investment that resulted in it holding a 49.9% interest in the Anaverde Project.[5]

13  (Id. ¶¶ 7, 25.)  That investment closed in May 2007.  (Id. ¶ 25.)

14      Shortly thereafter, on August 21, 2007, Anaverde LLC, the limited liability

15  company that controlled the Anaverde Project, entered into a new loan agreement

16  with CWCapital LLC ("CWC").  (Id. ¶ 27.)  The CWC loan provided replacement

17  financing and was used, in part, to extinguish the IndyMac loan.  (Id.)  On October

18  4, 2007, CWC transferred all of its interest in the loan to Cadim Note, Inc.

19  ("Cadim"), making Cadim the lender and real party in interest with respect to the

20  CWC loan.  (Id. ¶ 7.)

21

22

23

24  _____

25      [5] Farallon Capital Management, LLC manages Farallon Capital Partners, L.P.;
    Farallon Capital Institutional Partners, L.P.; and Farallon Capital Institutional

26  Partners III, L.P. (the "Farallon Entities").  Palmdale is "capitalized with
    investments by" the Farallon Entities (Ex. C, ¶ 7) which, together, are Plaintiffs in

27  the Palmdale Action.

28

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

**B.    Empire Land Files For Bankruptcy And The Palmdale Parties[6]**

**Enter Into A Court-Approved Settlement Releasing Mr. Healy.**

On December 11, 2007, Mr. Healy and defendants Previti and Miller met with representatives of the Palmdale Parties.  (Id. ¶ 102.)  During that meeting, Messrs. Previti and Miller alerted the Palmdale Parties to the possibility of a bankruptcy filing by Empire Land.  (Id.)  Messrs. Previti and Miller also proposed a settlement by which Empire Land would tender sole control over the Anaverde Project to the Palmdale Parties in exchange for a release of claims and covenant not to sue.  (Id. ¶ 106.)

With all parties represented by counsel, including separate bankruptcy and corporate counsel for the Palmdale Parties, and separate bankruptcy counsel for the Debtors, those terms were ultimately memorialized in the Anaverde Settlement Agreement after several months of intense negotiations.[7]  (Ex. A.)  On April 25, 2008, the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code.  (Ex. C, ¶ 113.)  On April 30, 2008, the Debtors moved for an order approving the Settlement Agreement (Ex. D), explaining to this Court in the motion papers that "Debtors are receiving releases from potential claims held by Palmdale against them" (id. p. 10), and that:

> Empire Land [would] terminate and resign its membership interest
> in [the Anaverde Project] including without limitation, all voting,
> management and distribution rights in exchange for the releases,
> indemnities, and covenants not to sue and other agreements in the
> Settlement Agreement.  [Settlement Agreement, Section 4]  Such
> releases include mutual release by, on the one hand, Empire Land,
> Empire Construction, and their Related Parties … and, on the other

---

[6] For purposes of this motion, Palmdale, the Farallon Entities and Cadim will be referred to collectively as the "Palmdale Parties."

[7] While the Farallon Entities were not named parties to the Settlement Agreement, Farallon Management signed the Agreement on behalf of Palmdale.

1    hand, Palmdale, Anaverde, and their Related Parties.  [Settlement

2    Agreement, Section 8] …  Additionally, as a condition to closing,

3    Cadim shall consent to the transactions contemplated in the

4    Settlement Agreement, and shall provide a broad release to Empire

5    Land, Empire Construction, and their Related Parties (including

6    releases of the guaranties given by Empire under the Cadim Loan).

7    [Settlement Agreement, Section 7]

8    (id. p. 6).

9    The Debtors further noted in their April 2008 motion papers:

10    Additionally, **Palmdale believes it has claims against Empire**

11    **Land** (each and all of which Empire Land has denied, and

12    continues to deny), including the following, without limitation.

13    **First, Palmdale asserts that the Debtor made negligent and/or**

14    **intentional misrepresentations on or before May 30, 2007 to**

15    **induce Palmdale to enter into the LLC Agreement and/or the**

16    **Basic Agreement.  These include, *inter alia*, misrepresentations**

17    **as to Empire's financial condition and the status of**

18    **development and construction of the Project.  …  Third,**

19    **Palmdale believes that the Debtor has made negligent and/or**

20    **intentional misrepresentations to Palmdale to convince**

21    **Palmdale to provide additional capital contributions during**

22    **the course of the project.**

23    (Id. pp. 8-9 (emphases added).)

24        The motion was served on the Palmdale Parties and their counsel.  (Ex. E.)

25    The Palmdale Parties did not oppose the motion and, on June 19, 2008, this Court

26    entered an order approving the Settlement Agreement and retaining jurisdiction over

27    enforcement of its terms.  (Ex. B.)  The Court-approved Settlement Agreement

28    included a release and covenant not to sue for the benefit of all parties and related

1  persons including, among others, Empire Land and EPI, and their affiliates,

2  including Mr. Healy.  (Ex. A, § 8.1.)  All of these terms were heavily negotiated by

3  the Palmdale Parties and their counsel.

4          1.     *The Release.*

5          The Settlement Agreement includes a broad, unconditional release by the

6  Palmdale Parties of, among others, Mr. Healy, for any conceivable claim, lawsuit or

7  proceeding concerning the Anaverde Project, whether "known or unknown" or

8  "suspected or unsuspected."  Specifically, Section 8.1, et seq. of the Settlement

9  Agreement (the "Release") provides in relevant part that the Palmdale Parties:

10          [S]hall absolutely, unconditionally and irrevocably release, remise,

11          absolve and forever discharge each Releasee of and from any and

12          all demands, actions, causes of action, suits, covenants,

13          obligations, contracts, controversies, agreements, liens, promises,

14          sums of money, accounts, bills, debts, reckonings, damages and

15          any and all other claims, counterclaims, defenses, rights of set off,

16          demands and liabilities whatsoever … of every name and nature,

17          known or unknown, pending, suspected or unsuspected, both at

18          law and in equity, which the Releasor … may now or hereafter

19          own, hold, have or claim to have against any Releasee for, upon or

20          by reason of any circumstance, action, cause or thing whatsoever

21          which arises at any time in relation to, or in any way in connection

22          with any of (a) [the Anaverde Project deal documents], (b) all

23          statements, budgets or opinions heretofore or hereafter made, or

24          information furnished by any Releasor or Releasee to any

25          Releasee, Releasor or any other person or entity, any and all

26          liabilities or obligations, which in each case is associated with the

27          interest of Releasor or Releasee in Anaverde or with Anaverde or

28          the Property …, (c) the business, operations or other activities of

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

1    the Releasor or Releasee related to Anaverde or the Property

2    (including the ownership, control, management and development

3    of Anaverde or the Property (whether a breach of fiduciary duty or

4    otherwise)) … [or] (d) all actions, omissions and obligations (or

5    alleged actions, omissions and obligations) of the Empire Protected

6    Parties under (1) the Basic Agreement … and (2) any

7    documentation with CWCapital and/or Cadim relating to

8    Anaverde…

9    Sections 8.1.2 to 8.1.4 further provide that the Palmdale Parties waived the

10   benefit of any law that prevents the release of unknown claims, including Section

11   1542 of the California Civil Code:

12   [The Palmdale Parties] hereby expressly waive[] any and all rights

13   or benefits conferred by any provision of law that prevents the

14   release of unknown Claims and expressly consent[] that [the

15   Settlement Agreement] shall be given full force and effect

16   according to [its] express terms and conditions, including, without

17   limitation, those relating to unknown and unsuspected claims,

18   demands and causes of actions, if any, as well as those relating to

19   any other claims, demands and causes of actions hereinabove

20   specified.

21   …

22   [E]ach of the parties hereto acknowledges and agrees that it is

23   familiar with, and has been advised by its counsel concerning, the

24   provisions of, Section 1542 of the California Civil Code [and]

25   waives any and all rights under Section 1542…

26   Section 8.1.6 makes clear that the later discovery of additional facts or

27   circumstances shall not affect the release:

28

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

1    [N]o fact, event, circumstance, evidence or transaction that could

2    now be asserted or that may hereafter be discovered shall affect in

3    any manner the final, absolute and unconditional nature of the

4    release set forth above.

5    The "absolute and unconditional nature of the release" is further emphasized

6    by the acknowledgment of the Palmdale Parties in Section 8.1.7 that they may

7    discover additional claims or facts (e.g., supposed claims for fraud or

8    misrepresentation), but nonetheless waive any claims they may have as the result of

9    such purported discoveries:

10    [The Palmdale Parties] may hereafter discover claims or facts in

11    addition to or different from those which [they] now know[] or

12    believe[] to exist with respect to the subject matter of the

13    [Settlement Agreement] and which, if known or suspected at the

14    time of executing the [Settlement Agreement], may have

15    materially affected the terms therein.  Nevertheless, … [the

16    Palmdale Parties] waive[] any rights, claims or causes of action

17    that might arise as a result of such different or additional claims or

18    facts and acknowledges and agrees that such waiver is a material

19    inducement to and consideration for [] execution of the [Settlement

20    Agreement].

21    Finally, Section 8.1.5 provides that **the release may be used as a complete**

22    **defense and basis for an injunction** against any lawsuit brought by the Palmdale

23    Parties in breach of the Settlement Agreement:

24    [T]he release set forth above may be pled as a full and complete

25    defense and may be used as a basis for an injunction against any

26    action, suit or other proceeding which may be instituted,

27    prosecuted or attempted in breach of the provisions of such release.

28

2262223

### 2.   *The Covenant Not to Sue.*

In addition to the Release, the Palmdale Parties in Section 11 of the Settlement Agreement provided an unconditional Covenant Not to Sue Mr. Healy:

> [The Palmdale Parties] absolutely, unconditionally and irrevocably, covenant[] and agree[] … that [they] will not sue (at law, in equity, in any regulatory proceeding or otherwise) … on the basis of any Claim or cause of action that has been released…

As in the case of the Release, Section 11.2 makes clear that the later discovery of additional facts or circumstances (<u>e.g.</u>, supposed evidence of fraud) shall not affect the Covenant Not to Sue :

> [N]o fact, event, circumstance, evidence or transaction that could now be asserted or that may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the covenant not to sue set forth above.

Section 11.1 provides that the Covenant Not to Sue may also be used as a complete defense and basis for an injunction against any lawsuit brought by the Palmdale Parties in breach of the Settlement Agreement:

> [T]he covenant not to sue set forth above may be pled as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such covenant.

Finally, Section 11 provides that Mr. Healy is entitled to recover his fees and costs for the Palmdale Parties' violation of the Covenant Not to Sue:

> [I]f [the Palmdale Parties] … violate[] the foregoing covenant, [the Palmdale Parties] jointly and severally agree[] to pay, in addition to such other damages as [Mr. Healy] may sustain as a direct or

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

1   indirect result of such violation, all attorneys' fees and costs

2   reasonably incurred…

3           *3.        Other provisions regarding Mr. Healy's liability.*

4       In addition to the Release and Covenant Not to Sue, the Palmdale Parties

5   made further agreements acknowledging that Mr. Healy shall have no personal

6   liability in connection with the Anaverde Project, and that Mr. Healy shall never be

7   liable to the Palmdale Parties for damages.  Specifically, Section 15 provides that

8   "in no event and under no circumstances, shall any of the Empire Protected Parties

9   [which includes Mr. Healy] … have any personal liability under this Agreement …

10  or otherwise in connection with Anaverde, the Property or the Project."  Section 17

11  provides that "no party shall be liable for any consequential or punitive damages of

12  or to any other party hereto (or any person or entity to the extent it could claim by,

13  through or under such party)."

14  **C.      The Palmdale Parties Sue Mr. Healy In Violation Of The**

15          **Settlement Agreement.**

16      On April 23, 2010 – exactly two years after entering into the Settlement

17  Agreement – the Palmdale Parties filed the adversary proceeding against Mr. Healy

18  and others.  The Palmdale Action was initiated by a complaint styled a "Complaint

19  … for Rescission of Contract, Damages and Equitable Relief."  The Complaint

20  asserts claims (a) by Palmdale, (b) by the Farallon Entities, and (c) by Palmdale as a

21  purported assignee of claims against the defendants by Cadim.[8]  (Ex. C, ¶¶ 7-10.)

22      The Complaint asserts seven causes of action against Mr. Healy:  for

23  conspiracy to commit fraud (first), fraud/intentional misrepresentation (second),

24      [8] As previously noted and alleged in the Palmdale Action, Cadim is the real
25  party in interest with respect to the CWC loan agreement made in August 2007.
    (Ex. C, ¶ 7.)  CWC and Cadim are bound by a Mutual Release Agreement.  (See Ex.
26  A, § 7; Ex. D, p. 6 ("as a condition to closing, Cadim shall … provide a broad
    release to Empire Land, Empire Construction, and their Related Parties"); Ex. C ¶
27  115 (describing July 21, 2008 release executed by CWC and Cadim.)  The analysis
    <u>infra</u> thus applies with equal weight to those claims brought by Palmdale as a
28  purported assignee of claims against the defendants by Cadim.

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

negligent misrepresentation (third), breach of fiduciary duty (fourth) and fraudulent

conveyance (eighth), and further seeks rescission of the Release in the Anaverde

Settlement Agreement (sixth) and rescission of the Mutual Release Agreement with

CWC and Cadim (seventh).  (Id. ¶¶ 125-163, 183-215.)  Each of these causes of

action is based on alleged misrepresentations in 2006 and 2007 concerning "Empire

Land's financial condition and Defendants' intent and ability to complete the

Anaverde Project."  (Id. ¶ 126.)  With respect to Mr. Healy, the Complaint alleges

vaguely that he was responsible for having "made the misrepresentations, fraudulent

concealment, breaches of fiduciary duty and other actions" "pursuant to his position"

as Empire Land's "attorney and co-conspirator," "a director of Empire Partners, Inc."

and someone holding "profit participation interests in certain Empire Projects."  (Id.

¶ 14.)  Mr. Healy also allegedly failed to disclose to the Palmdale Parties "the true

reason Defendants requested the release language" in the Settlement Agreement,

namely that "Defendants had misrepresented Empire Land's financial status

beginning as early as October 2006" and that "Empire Land was insolvent at the

time of their May 2007 investment."  (Id. ¶ 101.)  Finally, the Complaint asserts

that, in negotiating the settlement, Mr. Healy "repeated the false claim that Empire

Land was concerned that vendors would later try to sue them," thus necessitating a

release by the Palmdale Parties (rather than for the purportedly hidden reason – i.e.,

"to shield them from liability for their fraud upon Plaintiffs.")  (Id. ¶ 107.)

Mr. Healy now brings this motion to enforce the Settlement Agreement, which

expressly released him from those claims.

### III.   ARGUMENT

The Court has the authority to enforce the Settlement Agreement, the

Palmdale Parties have expressly agreed that the Court may issue injunctions to

enforce the Release and Covenant Not to Sue, and the Court should do so to enjoin

the continuation of the Palmdale Action.  The Release "absolutely, unconditionally

and irrevocably" released Mr. Healy "from any and all demands, actions, causes of

2262223

1    action [and] suits" (Ex. A, § 8.1), and the Palmdale Parties covenanted not to sue

2    Mr. Healy on the basis of any such claims (id. § 11).  The Release applies to claims

3    related in any way to the Anaverde Project, whether "known or unknown" or

4    "suspected or unsuspected" (id. §§ 8.1, 8.1.2), even if based on the later discovery of

5    claims or facts that would have affected the Palmdale Parties' decision to enter into

6    the Release (e.g., the supposed discovery of fraud or misrepresentations) (id.

7    §§ 8.1.6, 8.1.7).  The Release was made by or on behalf of each of the Palmdale

8    Parties, benefits Mr. Healy, and covers all of the claims asserted against him in the

9    Palmdale Action.  (Id. § 8.1.)  In short, and as set forth more fully below, the

10   Release and Covenant Not to Sue absolutely and unconditionally bar the Palmdale

11   Action, and the Palmdale Parties' attempt to circumvent those provisions should be

12   enjoined.

13        **A.     The Court Has Authority To Enforce The Settlement Agreement**

14               **And Its Order Approving The Settlement Agreement.**

15        It is well established that an action based on claims that were previously

16   released is barred.  See, e.g., Turner v. Metro, 1993 U.S. App. LEXIS 4378, *3 (9th

17   Cir. Feb. 22, 1993) (unpublished) (district court sua sponte dismissed complaint

18   with prejudice on the basis of a release contained in a prior settlement agreement);

19   Grillo v. California, 2006 U.S. Dist. LEXIS 15255, *19-23 (N.D. Cal. Feb. 14,

20   2006) (unpublished) (dismissing with prejudice all claims as barred by prior

21   settlement agreement plaintiff entered into knowingly and voluntarily, even though

22   plaintiff alleged he was "duped into signing the release"); Matter of West Texas

23   Marketing Corp., 12 F.3d 497, 501 (5th Cir. 1994) (holding that settlement

24   agreement approved by bankruptcy court qualified as final judgment on the merits

25   with res judicata effect and barred adversary proceeding).

26        It is also well established that where parties have entered into a settlement

27   agreement, a court may summarily enter a judgment enforcing the agreement.

28   Kukla v. National Distillers Products Co., 483 F.2d 619 (6th Cir. 1973); Cia Anon

2262223

- 12 -

1    <u>Venezolana de Navegacion v. Harris</u>, 374 F.2d 33 (5th Cir. 1967).  This authority

2    arises under the trial court's inherent equitable power summarily to enforce a

3    settlement agreement when the practical effect is merely to enter a judgment by

4    consent.  <u>Wood v. Virginia Hauling Co.</u>, 528 F.2d 423, 425 (4th Cir. 1975); <u>Kukla</u>,

5    483 F.2d at 621.

6        The power of a court to so act has been approved in the Ninth Circuit.  In

7    <u>Community Thrift & Loan v. Suchy (In re Suchy)</u>, 786 F.2d 900, 902-03 (9th Cir.

8    1985), the parties entered into a stipulation for relief from the automatic stay, and

9    the district court held that the stipulation precluded the debtor from engaging in

10   collateral litigation to challenge the creditor's right to proceed with a foreclosure

11   sale.  In upholding the district court's ruling, the Ninth Circuit observed that "it is

12   well settled that a court has inherent power to enforce summarily a settlement

13   agreement involving an action pending before it."  <u>Id.</u>; <u>see also</u> <u>TNT Marketing, Inc.</u>

14   <u>v. Agresti</u>, 796 F.2d 276, 278 (9th Cir. 1986) ("the court normally exercises its

15   enforcement power in response to a motion to enforce the agreement").

16       In <u>Crown Life Ins. Co. v. Springpark Assoc. (In re Springpark Assoc.)</u>, 623

17   F.2d 1377, 1380 (9th Cir. 1980), the debtor filed bankruptcy and a creditor filed a

18   complaint for relief from the automatic stay.  The parties stipulated that the creditor

19   was entitled to relief and an order was entered.  The bankruptcy case was

20   subsequently dismissed and the debtor refiled a bankruptcy case, once again seeking

21   the protection of the automatic stay.  The court held that the prior order granting

22   relief was binding upon the parties.  The Ninth Circuit affirmed, holding:

23           We find that the August 12 agreement should be enforced.  As

24           stated by this Court in <u>Dacanay v. Mendoza</u>, 573 F.2d 1075, 1078

25           (9th Cir. 1978):

26           "…a litigant can no more repudiate a compromise agreement than

27           he could disown any other binding contractual relationship. …

28           Moreover, it is equally well settled in the usual litigation context

1    that courts have inherent power summarily to enforce a settlement

2    agreement with respect to an action pending before it; the actual

3    merits of the controversy become inconsequential. … The

4    authority of a trial court to enter a judgment enforcing a settlement

5    agreement has as its foundation the policy favoring the amicable

6    adjustment of disputes and the concomitant avoidance of costly

7    and time consuming litigation."  [Citations omitted.]

8        Here, in addition to its inherent authority summarily to enforce the Settlement

9    Agreement, the Court has express enforcement authority and jurisdiction.  Namely,

10   it was this Court that entered an order approving the Settlement Agreement, which

11   specifically provides that "[t]he Court shall retain jurisdiction with respect to all

12   matters arising from or related to the implementation of" the order approving the

13   Settlement Agreement.  (Ex. B, ¶ 21.)  Notably, the merits of the Palmdale Action

14   are "inconsequential."  Dacanay, 573 F.2d at 1078.  The Court need look only to the

15   Settlement Agreement and its terms, and to exercise its authority to enforce those

16   terms.[9]

17       The Palmdale Parties also agreed that the Settlement Agreement's terms may

18   be enforced by injunction.  Specifically, the Settlement Agreement provides that

19   both the Release and the Covenant Not to Sue "may be used as a basis for an

20   injunction" against any proceeding attempted in breach of either of those provisions.

21   (Ex. A, §§ 8.1.5, 11.1.)  As set forth more fully below, the Palmdale Action is an

22   attempt to breach the Release, and is a clear breach of the Covenant Not to Sue.  The

23   Palmdale Parties' express agreement that those provisions "may be used as a basis

24   for an injunction" should therefore be enforced and the Palmdale Action should be

25       [9] While Local Bankruptcy Rule 7065-1(a) normally requires an injunction

26   motion be brought in an adversary proceeding, here, this Court expressly retained
     jurisdiction with respect to all matters concerning the Settlement Agreement

27   approved by the Court.  Moreover, the case authority cited in this section makes
     clear that the Court's retention of jurisdiction supports its power to summarily

28   enforce the Settlement Agreement's terms.

2262223

- 14 -

1 enjoined.  See also TNT Marketing, 796 F.2d 276 at 278 (court may specifically

2 enforce settlement agreement).

3    **B.    The Settlement Agreement Unconditionally Released Mr. Healy**

4       **From The Claims Asserted In The Palmdale Action.**

5       *1.    Mr. Healy is a beneficiary of the Release and the Covenant Not*

6          *to Sue.*

7    Mr. Healy is among those covered by the Release.  In addition to releasing

8 Empire Land, the Settlement Agreement provides for a release of each of Empire

9 Land's "Related Parties," including its "affiliates" and their present and former

10 directors and attorneys.  (Ex. A, § 8.1.)  EPI is an affiliate of Empire Land (as its

11 managing member), and Mr. Healy is both a former director of EPI and a former

12 attorney for Empire Land.  Accordingly, Mr. Healy is among Empire Land's

13 "Related Parties" covered by the Release.

14       *2.    Each of the Palmdale Parties is bound by the Release.*

15    Each of those parties that has sued Mr. Healy in the Palmdale Action is bound

16 by the Release.  First, Palmdale is a named party to the Settlement Agreement and

17 the named releasing party, and is thus clearly bound by the Release.  (Id. §§ 1, 8.1.)

18 Second, Palmdale expressly entered into the Release on behalf of not just itself, but

19 also on behalf of any entity, **including its "investors,"** to the extent such entity

20 "could claim by, through or under" Palmdale.  (Id. § 8.1.)  This includes the Farallon

21 Entities, who were "investors" in Palmdale and/or purport to claim through

22 Palmdale.  (See Ex. C, ¶ 7 (Palmdale "is capitalized with investments by Farallon

23 Capital Partners, L.P., Farallon Capital Institutional Partners, L.P. and Farallon

24 Capital Institutional Partners III, L.P., and is managed by Farallon Capital

25 Management, L.L.C.").)  Moreover, Farallon Capital Management signed the

26 Settlement Agreement on behalf of Palmdale.  Third, none of the Palmdale Parties

27 appealed this Court's June 19, 2008 order approving the Settlement Agreement.

28 That agreement is thus binding on each of them and precludes the Palmdale Action.

2262223

1  See In re Gibraltar Resources, Inc., 210 F.3d 573, 576 (5th Cir. 2000) (holding that

2  parties who failed to appeal bankruptcy court's order approving settlement were

3  bound by the settlement and their adversary action was precluded).  Finally,

4  Palmdale and the Farallon Entities have admitted in the Complaint that the Release

5  applies to all of them:  Paragraph 6 specifically alleges that the defendants

6  "fraudulently procured **releases from Plaintiffs** [i.e., Palmdale and the Farallon

7  Entities] … to absolve themselves from liability."  (Emphasis added.)

8         *3.*    *The Release covers each cause of action asserted against*

9               *Mr. Healy in the Palmdale Action.*

10      Each of the first five causes of action asserted in the Complaint against

11  Mr. Healy[10] are based on alleged misrepresentations in 2006 and 2007 concerning

12  two subjects:  (1) "Empire Land's financial condition," and (2) "Defendants' intent

13  and ability to complete the Anaverde Project."  (Ex. C, ¶ 126.)  The only allegations

14  as to Mr. Healy's misrepresentations or omissions concerning either of these

15  subjects are that:

16        •  Mr. Healy allegedly confirmed that Empire Land had a net worth of

17            $80 million and liquidity of $10 million on or about May 29, 2007 (id.

18            ¶ 54); and

19        •  Mr. Healy allegedly knew that Empire Land had no intention or the

20            resources to pay its share of Anaverde Project development expenses,

21            but failed to disclose that to the Palmdale Parties (id. ¶ 96).

22      The five causes of action based on these supposed misrepresentations or

23  omissions, however, are explicitly within the scope of the claims that are released in

24  the Settlement Agreement.  Any misrepresentation or omission Mr. Healy

25  purportedly made, or information he may have provided, to the Palmdale Parties in

26  _____

27      [10] As described in Section II.D., supra, those five causes of action are:
conspiracy to commit fraud (first), fraud/intentional misrepresentation (second),

28  negligent misrepresentation (third), breach of fiduciary duty (fourth) and fraudulent
conveyance (eighth).

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

2006 and 2007 concerning Empire Land's financial condition or its ability or intent to complete the Anaverde Project was, on its face, "in relation to" or "in connection with" the Anaverde Project and/or the Anaverde Project deal documents.  Such claims have therefore been released, as the Release "absolutely, unconditionally and irrevocably release[s] … all … causes of action … for, upon or by reason of any circumstance, action, cause or thing whatsoever which arises at any time in relation to, or in any way in connection with any of" (a) the Anaverde Project deal documents, (b) all statements made, or information furnished by, Mr. Healy to the Palmdale Parties concerning the Anaverde Project, (c) the business, operations or other activities of Mr. Healy related to the Anaverde Project "(whether a breach of fiduciary duty or otherwise)," and (d) all actions, omissions and obligations of Mr. Healy under the Anaverde Project deal documents or the CWC loan documentation.  (Ex. A, § 8.1.)

Moreover, there can be no doubt that the Palmdale Parties understood at the time the Settlement Agreement was executed that the Release barred claims concerning "Empire Land's financial condition and Defendants' intent and ability to complete the Anaverde Project."  The Palmdale Parties were making those very allegations **before** the Settlement Agreement was executed, and those allegations thus played a key role in the negotiations concerning the Release.  Indeed, when the Settlement Agreement was submitted to this Court for approval one week after its execution, Empire Land specifically identified Palmdale's allegations of misrepresentations about Empire Land's financial condition and Defendants' intent and ability to complete the Anaverde Project as a basis for the Release.  (See Ex. D, pp. 8-9.)  In particular, Empire Land informed the Court, the Palmdale Parties and their counsel (including the Steptoe firm, which filed the adversary action) in the April 30, 2008 approval motion that the Settlement Agreement provides a release because, among other reasons:

1     **Palmdale believes it has claims against Empire Land** (each and

2     all of which Empire Land has denied, and continues to deny),

3     including the following, without limitation.  **First, Palmdale**

4     **asserts that the Debtor made negligent and/or intentional**

5     **misrepresentations on or before May 30, 2007 to induce**

6     **Palmdale to enter into the LLC Agreement and/or the Basic**

7     **Agreement.  These include, *inter alia*, misrepresentations as to**

8     **Empire's financial condition and the status of development and**

9     **construction of the Project.**  …  Third, **Palmdale believes that**

10     **the Debtor has made negligent and/or intentional**

11     **misrepresentations to Palmdale to convince Palmdale to**

12     **provide additional capital contributions during the course of**

13     **the project.**

14     (Id. (emphases added).)

15 In light of this explicit disclosure, there can be no dispute that the parties intended

16 the Release to cover the claims that the Palmdale Parties are now attempting to

17 resuscitate two years later.

18     Finally, another provision of the Settlement Agreement makes clear that

19 Mr. Healy cannot be held personally liable for anything made, said or done in

20 connection with the Anaverde Project.  Specifically, Section 15 provides that "in no

21 event and under no circumstances, shall any of the Empire Protected Parties [which

22 includes Mr. Healy] … have **any personal liability** under this Agreement … **or**

23 **otherwise in connection with Anaverde, the Property or the Project.**"

24 (Emphases added.)  Thus, even if the Release were not so broad as to bar the claims

25 asserted in the Palmdale Action – which it clearly is – Section 15 of the Settlement

26 Agreement provides an independent bar to the claims against Mr. Healy.

27

28

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

4.     *The Covenant Not to Sue also bars the claims against Mr. Healy.*

For the same reasons that the Release applies to the claims asserted against Mr. Healy, the Covenant Not to Sue applies and bars those claims. The Palmdale Parties "absolutely, unconditionally and irrevocably" covenanted and agreed … that [they] will not sue … on the basis of any Claim or cause of action that has been released." (Ex. A, § 11.) This covenant was made irrespective of any "fact, event, circumstance [or] evidence" that could have been asserted at the time the Settlement Agreement was made, or that may have thereafter been discovered – including evidence of fraud or misrepresentations. (Id. § 11.2.) As explained above, the Palmdale Parties released the claims asserted in the Palmdale Action, whether or not fraud or other purported claims were later discovered. Accordingly, the Palmdale Action violates the Covenant Not to Sue.

5.     *The Farallon Entities also lack standing to sue Mr. Healy.*

Even if the Farallon Entities were not bound by the Release and Covenant Not to Sue – which they are – they lack standing to sue Mr. Healy for two independent reasons. First, pursuant to the Settlement Agreement, Palmdale (a) was required to obtain from the Farallon Entities an assignment of any claims that would have been released as if the Farallon Entities were parties to the Settlement Agreement, and (b) represented that the Farallon Entities "has no, and can have no," cause of action that would have been released if the Farallon Entities had been a party to the Settlement Agreement. (Ex. A, § 8.1.1, 18.) These provisions demonstrate that the Farallon Entities have no standing to sue in the Palmdale Action, as they represent a concession by the Palmdale Parties that the Farallon Entities have no independent injury. See Shell Petroleum, N.V. v. Graves, 709 F.2d 593, 595 (9th Cir. 1983). They also are an admission that any claims by the Farallon Entities are covered by the Release to the same extent as any claims made by Palmdale.

Second, the Farallon Entities' status as investors in Palmdale does not confer standing to bring suit for alleged harm to Palmdale. On the contrary, the Supreme

1  Court held long ago that an investor does not have standing to bring suit when the

2  only injury feared "is the indirect harm which may result to every" investor from

3  harm to the company. <u>Pittsburgh & West Virginia R. Co. v. United States</u>, 281 U.S.

4  479, 487, 50 S. Ct. 378 (1930). The Ninth Circuit agreed, holding: "To have

5  standing to maintain an action, a shareholder must assert more than personal

6  economic injury resulting from a wrong to the corporation. A shareholder must be

7  injured directly and independently of the corporation." <u>Shell</u>, 709 F.2d at 595

8  (citations omitted). This authority applies equally to limited liability companies,

9  such as Palmdale. <u>See PacLink Communications Int'l, Inc. v. Superior Court</u>, 90

10  Cal. App. 4th 958, 964, 109 Cal. Rptr. 2d 436 (2001) ("Because members of the

11  LLC hold no direct ownership interest in the company's assets (Corp. Code, §

12  17300), the members cannot be directly injured when the company is improperly

13  deprived of those assets"); <u>Wallner v. Parry Professional Bldg., Ltd.</u>, 22 Cal. App.

14  4th 1446, 1449, 27 Cal. Rptr. 2d 834 (1994) ("When a partnership has a claim, the

15  real party in interest is the partnership and not an individual member of the

16  partnership."); <u>Tooley v. Donaldson, Lufkin & Jenrette, Inc.</u>, 845 A.2d 1031, 1035-

17  36 (Del. 2004).

18      In short, the Farallon Entities have asserted no injury in the Palmdale Action

19  that is either direct or independent of their rights as investors in Palmdale, and thus

20  lack standing to sue Mr. Healy.

21      **C.    The Palmdale Parties Cannot Now Repudiate The Release.**

22      Obviously recognizing that the Settlement Agreement and Mutual Release

23  Agreement bar their claims, the Palmdale Parties have attempted to circumvent

24  those agreements by asserting two causes of action against Mr. Healy seeking

25  rescission of the releases included therein. (Ex. C, ¶¶ 183-201.) To support their

26  claims, the Palmdale Parties now contend that Mr. Healy fraudulently led them to

27  believe that the Release and Covenant Not to Sue were needed to release "a couple

28  of lawsuits pending against the venture and its members, as well as a lawsuit in

1    which the venture is a Cross-Complainant."  (<u>Id.</u> ¶ 100.)  According to the Palmdale

2    Parties, the true reason Mr. Healy and the defendants wanted the Release and

3    Covenant Not to Sue was because "Defendants had misrepresented Empire Land's

4    financial status beginning as early as October 2006 … [and] was insolvent at the

5    time of their May 2007 investment."  (<u>Id.</u> ¶ 101.)  These contentions are unavailing

6    for four independent reasons.

7         First, the two rescission causes of action are barred for the same reason as the

8    first five causes of action.  Namely, the allegations that Mr. Healy and the other

9    defendants sought the Release because they had "misrepresented Empire Land's

10   financial status" are "in relation to" or "in connection with" the Anaverde Project

11   and/or the Anaverde Project deal documents, and are therefore covered by the

12   Release itself.

13        Second, the Palmdale Parties' claim that they did not know about the

14   supposed misrepresentations concerning Empire Land's financial condition at the

15   time of the Settlement Agreement (and would not have entered into it had they

16   known) is demonstrably false.  (<u>Id.</u> ¶ 112.)  At the same time the Palmdale Parties

17   were entering into the settlement, they were alleging that misrepresentations had

18   been made to them about Empire Land's financial condition and the development of

19   the Anaverde Project.  (Ex. D, pp. 8-9.)  Indeed, as discussed above, this basis for

20   the Release was specifically identified to this Court in the April 30, 2008 motion for

21   approval of the Settlement Agreement.  (<u>Id.</u>)  The Palmdale Parties and their counsel

22   – including the same law firm that filed the Palmdale Action – were served with the

23   approval motion and were thus well aware at the time that this representation was

24   made to the Court, but lodged no objection.  (Ex. B, ¶ C (the Court noting in its June

25   19, 2008 order that notice of the motion was given to Cadim and counsel for

26   Palmdale); Ex. E, p. 2 (April 30, 2008 proof of service of the approval motion on the

27   Palmdale Parties and the Steptoe firm as counsel to Palmdale).)  Accordingly, the

28   Palmdale Parties cannot now credibly claim that they were unwittingly duped into

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

1    providing a Release on the grounds that they did not know about certain alleged

2    misrepresentations, when they were threatening to sue over those very same

3    allegations at the time they provided the Release.

4         Third, even assuming for the sake of argument that the Palmdale Parties did

5    not know about the alleged misrepresentations at the time of the Settlement

6    Agreement (which they clearly did), the Release is still enforceable pursuant to the

7    express terms of the Settlement Agreement.  The Release is "unconditional" and

8    "irrevocable," and applies to all claims, even if those claims were unknown or

9    unsuspected at the time the Agreement was made.  (Ex. A, §§ 8.1, 8.1.2-8.1.4

10   (including waiver of Cal. Civ. Code § 1542 after being advised by counsel).)  The

11   Palmdale Parties specifically agreed that the discovery of additional facts or

12   circumstances (e.g., supposed evidence of fraud) shall not "affect in any manner the

13   final, absolute and unconditional nature of the release." (Id. § 8.1.6.)  They further

14   acknowledged that they may discover claims or facts in addition to or different from

15   those which they then knew and which, if known, may have materially affected the

16   Settlement Agreement's terms; nonetheless, the Palmdale Parties waived any claims

17   or causes of action that might arise as a result of such discoveries.  (Id. § 8.1.7.)

18   Finally, Palmdale expressly acknowledged that its waiver of unknown claims was a

19   "material inducement to and consideration for" its execution of the Settlement

20   Agreement.  (Id.)  In short, even if they did not know about supposed

21   misrepresentations concerning Empire Land's financial condition at the time they

22   entered into the Settlement Agreement, the Palmdale Parties expressly

23   acknowledged that they could later discover that misrepresentations had been made,

24   but were nonetheless expressly waiving the right to bring claims based on any such

25   misrepresentations.  Accordingly, the Palmdale Parties cannot invoke supposedly

26   unknown fraud claims as a basis for rescinding the Release.  See Winet v. Price,

27   4 Cal. App. 4th 1159, 1162-63, 1166-67, 1172-73 (1992) (affirming dismissal of

28   claims where plaintiff had previously released "any and all … claims, … damages

2262223

- 22 -

1  and causes of action whatsoever, of whatever kind or nature, whether known or

2  unknown, or suspected or unsuspected …" had been advised by counsel as to

3  Section 1542, and had waived the benefits of Section 1542).

4      Finally, the Palmdale Parties' attempt to rescind the Release by filing the

5  adversary action is untimely and must be rejected, as it is an impermissible effort to

6  end-run Federal Rule of Civil Procedure 60(b)(3) (governing relief from a court

7  order when procured by fraud or misrepresentation) and Rule 60(c)(1) (requiring a

8  party to seek such relief within one year of the order).  As a matter of law, claims for

9  rescission of a settlement agreement must be treated as a Rule 60(b)(3) motion.

10  <u>Allarcom Pay TV, Ltd. v. Home Box Office, Inc.</u>, 2000 U.S. App. LEXIS 172, *4

11  (9th Cir. Jan 4, 2000) (unpublished) (treating claims for rescission of a settlement

12  agreement as a motion to reconsider under Rule 60(b)(3)); <u>Wolfson v. Wolfson</u>,

13  2004 U.S. Dist. LEXIS 1485, *12-14 (S.D.N.Y. Feb. 5, 2004) (same).  Such relief

14  must be sought "no more than a year after entry of the judgment or order."  Fed. R.

15  Civ. P. 60(c); <u>see also</u> Fed. R. Bankr. P. 9006(b)(2) ("The court may not enlarge the

16  time for taking action under" Rule 9024, which implements Rule 60(b)).  Here, this

17  Court entered a final, appealable order approving the Settlement Agreement on

18  June 19, 2008.  (Ex. B.)  The period for seeking relief from that order thus expired

19  on June 19, 2009 – almost a year before the Palmdale Action was filed.  Moreover,

20  the Palmdale Parties had every opportunity to seek such relief within the statutory

21  period, but failed to do so:  **By the Palmdale Parties' own admission**, they were

22  aware of the alleged fraud by no later than December 2008, and thus had another six

23  months to seek relief from the approval order before the one-year period elapsed,

24  but did not.  (Ex. C, ¶ 123 ("In December 2008 … [Plaintiffs were alerted] for the

25  first time to the fact that Defendants had misrepresented Empire Land's liquidity to

26  lure Plaintiffs into investing in the Project.").)  The Palmdale Parties' claim for relief

27  from the approval order, including rescission of the Release, is therefore not timely

28  and should be rejected.  <u>See Allarcom</u>, 2000 U.S. App. LEXIS at *4 (affirming

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

1   dismissal of claim to rescind settlement agreement because the claim was filed more

2   than one year after settlement agreement was entered and was therefore not timely);

3   <u>Wolfson</u>, 2004 U.S. Dist. LEXIS 1485 at *14 (action to rescind settlement

4   agreement was time barred when filed more than one year after order approving the

5   settlement was entered).

6       In sum, there is no basis to rescind the Release or Covenant Not to Sue.

7   Those provisions should be enforced, and the Palmdale Action should be enjoined.

8       **D.    Mr. Healy Should Be Awarded His Fees And Costs.**

9       The Settlement Agreement specifically provides that the Palmdale Parties

10  jointly and severally agree to "pay, in addition to such other damages as [Mr. Healy]

11  may sustain as a direct or indirect result of" a violation of the Covenant Not to Sue,

12  "all attorneys' fees and costs reasonably incurred…"  (Ex. A, § 11.)  As established

13  above, the Palmdale Parties violated the Settlement Agreement's Covenant Not to

14  Sue by suing Mr. Healy in the Palmdale Action.  Accordingly, this Court should

15  award Mr. Healy his fees and costs incurred in connection with this motion and the

16  Palmdale Action.

17      **IV.   <u>CONCLUSION</u>**

18      For the foregoing reasons, Mr. Healy respectfully requests that the Court

19  enforce the Settlement Agreement and the Court's June 19, 2008 order approving the

20  Settlement Agreement, and thereby enjoin the Palmdale Action and any other

21  attempt to bring an action in violation of the Release or Covenant Not to Sue.

22

23

24

25

26

27

28

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION

1    Pursuant to Section 11 of the Settlement Agreement, Mr. Healy further requests that

2    the Court award him his fees and costs incurred in connection with this motion and

3    the Palmdale Action.

4

5    Dated:  July 1, 2010                              Respectfully submitted,

6                                                      IRELL & MANELLA LLP

7

8                                                      /s/ Howard J. Steinberg

9                                                      Howard J. Steinberg
                                                       Attorneys for Peter Healy
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2262223

MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COURT ORDER, AND FOR INJUNCTION